890 P.2d 335

**GRAHAM CAPITAL CORPORATION,
a Pennsylvania corporation,
Plaintiff–Appellant,**

v.

**John B. SIMPSON and Rita L. Simpson,
husband and wife, Defendants–
Respondents.**

**No. 21022.**

Supreme Court of Idaho,
Boise, November 1994 Term.

Feb. 24, 1995.

Kneeland, Korb, Collier & Legg, Ketchum, for appellant. Bruce J. Collier argued.

Schlender Chartered, Hailey, for respondents. E. Lee Schlender argued.

JOHNSON, Justice.

This is a real estate sale case. The primary issue presented is whether the sale agreement is unenforceable because the seller's agent did not have written authority to sign the agreement as required by I.C. § 9–505(5) prior to the signing. We conclude that the agreement is enforceable because the seller ratified it before the purchaser declined to purchase the property.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

On August 27, 1991, John and Rita Simpson signed an agreement (the agreement) to purchase a subdivision lot (the property) in Ketchum, Idaho. The agreement was also signed by David Hutchinson on behalf of Graham Capital Corporation, the owner of the property.

On January 9, 1992, the president and the secretary of Graham Capital signed the escrow instructions, a corporate warranty deed, and other closing documents, and returned them to the closing officer for the title insurance company which was to supervise the closing of the sale. These documents contained all the material terms of the sale.

On January 10, 1992, the closing officer received the documents signed by the president and the secretary of Graham Capital and signed the escrow instructions on behalf of the title insurance company. Before January 17, 1992, the closing officer also received a certificate from Graham Capital's secretary certifying that Graham Capital's board of directors had authorized the president and the secretary to execute on behalf of Graham Capital the documents forwarded to the closing agent.

On January 17, 1992, the closing officer telephoned John Simpson to confirm that the Simpsons had received the closing documents. According to the closing officer's affidavit, Simpson indicated he would close, but that he needed to sell some stock to obtain the closing funds.

On January 21, 1992, just as it appeared the parties were about to close the transaction, John Simpson wrote to the closing officer stating that the Simpsons had "decided to decline the purchase" of the property. The closing officer received this letter sometime after January 28, 1992.

The Simpsons refused to close the sale, and Graham Capital sued them for specific performance and damages. The Simpsons asserted that the agreement was unenforceable because Hutchinson did not have written authority to act as Graham Capital's agent at the time the agreement was signed, as required by I.C. § 9–505(5). Although there is a document dated August 2, 1991 which authorizes Hutchinson to act on Graham Capital's behalf, the document was actually created after the Simpsons "decided to decline the purchase."

Graham Capital requested that the trial court grant partial summary judgment establishing that the agreement was enforceable and that the Simpsons breached the agreement. The Simpsons requested that the trial court grant summary judgment in their favor. The trial court granted summary judgment to the Simpsons, ruling the agreement null and void because Hutchinson did not have prior written authorization from Graham Capital to sign the agreement. The trial court also awarded the Simpsons attorney fees as prevailing parties in a civil action to recover in a commercial transaction, pursuant to I.C. § 12–120(3). Graham Capital appealed.

## II.

### THE AGREEMENT IS ENFORCEABLE.

Graham Capital asserts that, despite the lack of prior written authority for Hutchinson to sign the agreement, the agreement is enforceable under I.C. § 9–505(5) because Graham Capital ratified the agreement before the Simpsons declined to purchase the property. We agree.

I.C. § 9–505(5) governs agreements for the sale of real property:

In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his

agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

\*   \*   \*   \*   \*   \*

(5) An agreement for ... the sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, *unless the authority of the agent be in writing, subscribed by the party sought to be charged.*

I.C. § 9–505(5) (1990) (Emphasis added).

In *Houser v. Hobart,* 22 Idaho 735, 127 P. 997 (1912), the Court considered a contract for the sale of barley that was covered under another subsection of the statute that is now I.C. § 9–505. The agreement was signed by the sellers, but not by the buyer. The Court held that the absence of the buyer's signature made the contract unenforceable because it lacked mutuality of obligation. 22 Idaho at 748, 127 P. at 1001.

In *Houser,* the Court also considered whether the buyer had ratified the contract, thereby satisfying the objection that the buyer did not sign the contract. In rejecting ratification, the Court said:

> It is alleged in the complaint that [the buyer] ratified the contract, and it is contended that that is sufficient to satisfy the objection that the contract was not signed by him. Admitting that that allegation is true, it would then be necessary to introduce oral testimony on the trial of the case to prove that he had ratified the contract. In such a case parol evidence is not admissible to prove that the contract was ratified, as it seems to be well settled that unless the essential terms of the contract can be ascertained from the writing itself or by reference in it to something else, the memorandum is not a sufficient compliance with the statute....
>
> Referring to the memorandum itself, the price there stated is vague and uncertain and would require parol proof to show what was meant by the figures there used. That might be permitted had the memorandum been signed by both parties. The memorandum presents the contract without the signature of [the buyer] and there

was no enforceable contract on [the buyer's] part to purchase the barley.

*Id.* at 748, 127 P. at 1001.

Implicit in this discussion in *Houser* is the premise that there may be ratification of an agreement that is unenforceable under I.C. § 9–505. Otherwise, there would have been no reason for the Court to have considered the issue. While the Court rejected ratification in *Houser* because the agreement did not contain essential terms, the Court recognized ratification as a means of validating an agreement that was otherwise invalid because it lacked the signature of one of the parties.

In this case, we are confronted with the question whether there may be ratification of an agreement that is unenforceable under I.C. § 9–505(5) because of the lack of prior written authorization for an agent who signed the agreement. We conclude that lack of written authorization for an agent to sign an agreement does not prevent ratification of the agreement by the principal under I.C. § 9–505(5). In this case, as in *Houser,* the agreement originally lacked a signature that would have made it enforceable. Therefore, we conclude that Graham Capital could ratify the agreement, if the ratification occurred before the Simpsons "decided to decline the purchase."

Although there was not an express ratification of the agreement before the Simpsons declined the purchase, the closing documents signed by the president and the secretary of Graham Capital were sufficient to ratify the agreement. These documents, which were delivered to the closing agent before the Simpsons declined the purchase, contained all the material terms of the sale. Therefore, the agreement is enforceable.

## III.

## CONCLUSION.

We reverse the summary judgment of the trial court and remand the case to the trial court for entry of partial summary judgment in favor of Graham Capital and for further proceedings as appropriate.

We award costs on appeal to Graham Capital. We award attorney fees on appeal to Graham Capital, as provided for in the agreement.

McDEVITT, C.J., TROUT and SILAK, JJ., and MOSS, J. Pro Tem, concur.